[Cite as *State v. McCreary*, 2016-Ohio-4753.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                    Court of Appeals No. L-15-1206

    Appellee                                            Trial Court No. CR0201402273

v.

Jeremy McCreary                                    **DECISION AND JUDGMENT**

    Appellant                                           Decided: June 30, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Claudia A. Ford, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Jeremy McCreary, appeals the July 2, 2015 judgment of the

Lucas County Court of Common Pleas convicting him of burglary, a violation of R.C.

2911.12(A)(1) and (D). For the following reasons, we affirm.

**{¶ 2}** Appellant provides the following assignment of error:

Appellant's conviction fell against the manifest weight of the
evidence.

**Facts**

**{¶ 3}** On the morning of August 4, 2014, Beverly Dyer heard a loud noise in her one-story single family home as she was sleeping in the guest bedroom with her young granddaughter. Fearing the sound would awaken her granddaughter, Dyer exited the room to address the sound, which she assumed was caused by her husband who usually left for work during that time of the morning. As Dyer left the guest room she noticed the television in the master bedroom had been capsized. Dyer then looked into the kitchen where she saw an individual whom she described as a male with brown skin, black hair and a scruffy beard wearing a black t-shirt and tan shorts. Dyer slowly approached the individual, getting within five to seven feet of him. As she moved toward the suspect, the two exchanged glares for approximately 10-15 seconds before he mumbled something inaudible to Dyer and exited the residence.

**{¶ 4}** After the suspect left the house, Dyer called 911 and gave a description of the individual to the dispatcher who then forwarded the incident and description over the air to on-duty officers in the area. Shortly thereafter, appellant, who was on his bike, was stopped by a police officer at an intersection near Dyer's residence since he matched the description of the suspect. The officers then performed what is known as a one-on-one identification with Dyer, who was placed in a police vehicle with tinted windows, and

2.

was driven past appellant. Dyer immediately confirmed appellant was the individual who she saw in her house earlier that morning. The officers placed appellant under arrest.

{¶ 5} During the booking process, the inmate property officer documented on the booking summary that appellant was wearing a black shirt and white pants.

{¶ 6} At the crime scene, several fingerprints were discovered by a Toledo police detective, but only one print was in good enough condition to be analyzed as evidence, according to testimony by the detective. When processed, the fingerprints from the scene provided no matches to appellant's fingerprints. The detective also found an impression of a left shoeprint at the crime scene. An expert witness testified at his trial deposition that after examination, the impression found at the scene could have been produced by the shoes appellant was wearing at the time of arrest.

{¶ 7} On August 12, 2014, appellant was indicted on one count of burglary, in violation of R.C. 2911.12(A)(1) and (D), a felony of the second degree. Appellant entered a plea of not guilty, then later entered a plea of not guilty by reason of insanity. Thereafter, appellant withdrew the not guilty by reason of insanity plea.

{¶ 8} On February 3, 2015, appellant filed a motion to suppress the identification evidence arguing the show-up identification procedure used was unduly suggestive and produced an unreliable identification. Appellant later withdrew his motion.

{¶ 9} A jury trial commenced on June 8, 2015, and on July 2, 2015, appellant was found guilty of burglary and sentenced to five years in prison. Appellant appealed.

## Standard of Review

{¶ 10} In a criminal context, a verdict or finding may be overturned on appeal if it is against the manifest weight of the evidence or there is an insufficiency of evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In the former, the appellate court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. *Id.* In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. *Id.* at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. *Id.* at 390; *State v. Jenks*, 61Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

## Arguments and Analysis

{¶ 11} Appellant was convicted of burglary, a violation of R.C. 2911.12 (A)(1). That statutory provision provides that no person shall trespass in an occupied structure when another person, who is not an accomplice of the offender, is present with the purpose to commit a criminal offense.

{¶ 12} Appellant argues his conviction fell against the manifest weight of the evidence. While appellant does not contest the fact that a burglary occurred at the Dyer

4.

residence on the morning of August 4, 2014, he insists the state failed to show he was the individual who committed the burglary on several bases. Appellant first contends that one-on-one identifications are inherently suggestive due to the likelihood of a victim misidentifying a suspect. Second, appellant argues the location where he was apprehended was too close in proximity to the residence for a suspect who would be attempting to flee from a burglary on a bicycle. Next, appellant asserts the jailhouse recordings do not serve as any admission to the burglary. Appellant also argues the testimony regarding the shoeprint discovered at the scene is not conclusive. Finally, appellant claims the state failed to prove that the booking report which indicated appellant was wearing white shorts not tan shorts was a mistake rather than an observation by the inmate property officer. Appellant cites *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), in support of his position.

{¶ 13} The state counters one-on-one identifications are not necessarily suggestive provided there is no substantial likelihood of misidentification, citing *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), in support. Next, the state claims the testimony regarding the location where appellant was apprehended is reasonable and cannot constitute a rational basis for finding the jury lost its way. Furthermore, the state argues the statements appellant made during the redacted phone conversations are inculpatory and were for the trier of fact to interpret. The state also contends the jury was capable of examining and evaluating the similarities and differences between appellant's shoes and the shoeprints collected at the scene, as well as the credibility of the testimony

5.

regarding the shoeprints.  Finally, the state maintains it did not arbitrarily conclude that the booking report made by the property officer was a mistake as the recorded phone conversations and testimony of Dyer and a police officer indicate the color of appellant's shorts at the time of booking was erroneous.

## Identification

{¶ 14} Ohio courts have held that one-on-one identification, in which a witness is shown only one suspect within a relatively short period of time after an incident occurs, while it may be suggestive under certain circumstances, "'is impermissible only where there is [a] substantial likelihood of misidentification.'"  *State v. Torres*, 8th Dist. Cuyahoga No. 88381, 2007-Ohio-2502, ¶ 81, quoting *State v. Batey*, 8th Dist. Cuyahoga No. 74764, 1999 WL 685647 (Sept. 2, 1999).  In order to determine whether, under the totality of the circumstances, the identification of appellant was reliable in this case, we must consider the following factors:  (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the suspect; (4) the level of certainty of the witness; and (5) the length of the time between the crime and the identification.  *State v. Brown*, 6th Dist. Lucas No. L-10-1030, 2011-Ohio-643, ¶ 10, citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

{¶ 15} Here, appellant contends that the one-on-one identification conducted shortly after the burglary was inherently suggestive. Appellant claims the one-on-one was

6.

unreliable as Dyer omitted to mention appellant's noticeable "M" tattoo between his eyebrows in her description to the 911 dispatcher or to any of the officers.

{¶ 16} At trial, Officer Shaun Bates, who was present with appellant during the one-on-one identification, testified the one-on-one was conducted during daylight, no more than five feet away, with no obstructions between the vehicle where Dyer was seated and appellant. Officer Bates also stated that before Dyer was driven past appellant, the handcuffs were removed and appellant was given an explanation about the procedure.

{¶ 17} Sergeant Joseph Taylor testified he drove Dyer to the location where the one-on-one took place and instructed Dyer that she had to be sure that appellant was the suspect, and not just think that he could possibly be the suspect. However, Dyer testified she did not recall receiving any instructions during the ride. Dyer also testified she was 100 percent sure that she made the correct identification.

{¶ 18} After reviewing the record and applying the factors set forth in *Biggers,* we find the one-on-one identification of appellant was not unduly suggestive. Dyer's opportunity to view the burglary suspect face-to-face while he was in her house allowed Dyer a sufficient amount of time to identify the suspect with a reasonable amount of accuracy. Dyer's failure to mention the facial tattoo in her description of the suspect to the dispatcher is not of such significance as to disregard that appellant's clothing and physical appearance matched Dyer's description or the level of certainty Dyer displayed when she identified appellant as the suspect during the one-on-one identification.

7.

Furthermore, the amount of time which elapsed between the burglary and the identification was not so lengthy such that the likelihood of misidentification increased. Dyer placed the 911 call at 8:04 a.m., shortly after the suspect fled from her residence, and an officer first arrived on the scene at 8:11 a.m. Sergeant Taylor estimated that the one-on-one identification took place at approximately 8:30 a.m. and took around five minutes to complete. In light of the foregoing, appellant's argument pertaining to the suggestive nature of the one-on-one identification procedure is without merit.

### Location of Apprehension

{¶ 19} Appellant argues the location where he was stopped by police was very close to the Dyer residence which does not make sense for a suspect who would be attempting to flee from a burglary on a bicycle. Appellant claims he was stopped about a tenth of a mile from the Dyer home.

{¶ 20} Circumstantial evidence of a crime has the same probative value as direct evidence and is sufficient to prove the elements of a criminal case. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When considering circumstantial or direct evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

{¶ 21} Here, the record shows appellant was stopped by law enforcement within close proximity of the Dyer residence where a burglary had just occurred. No evidence

8.

was presented as to the exact distance from the Dyer home to the location where appellant was stopped. We cannot say this circumstantial evidence as to where appellant was apprehended weighs heavily against a conviction or that the jury lost its way in considering this evidence.

**Jailhouse Recordings**

{¶ 22} Appellant submits the recordings do not serve as any admission to the burglary.

{¶ 23} At trial, the state produced recorded telephone conversations of appellant while he was in custody. One recording captured appellant saying, "Listen, they caught me in a black T-shirt and some tan shorts and some shoes. No mask, no gloves, no nothing. All I had on me was my wallet bro." In the other recording, appellant can be heard saying, "Naw, man, it'll be a bid, my nigga. It's gonna be a bid * * *. Yeah, man ya know I fucked up. I fucked up a[ ]lot. I shouldn't been drinkin out Alexis at the bar. I wouldn't have a fuckin burglary 'cuz I don't remember none of that shit."

{¶ 24} During these two recorded phone calls, appellant made statements which the jury could have viewed as incriminating. In one call, appellant acknowledges he messed up. In the other call, appellant describes being caught in a black t-shirt and tan shorts, which serves as corroborating evidence to the credibility of Dyer's identification of the burglar she saw in her home, and contradicts the booking summary report.

{¶ 25} While the recorded conversations may not be direct admissions by appellant that he committed the burglary, it was for the jury to determine whether the

9.

recorded phone conversations were inculpatory or exculpatory. Following the directive in *Thompkins,* we "must give due deference to the findings made by the jury." *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. We find nothing in the record which indicates the jury lost its way or that a manifest miscarriage of justice resulted in the jury's consideration of the jailhouse recordings.

## Shoeprint Evidence

{¶ 26} Appellant argues the testimony regarding the shoeprint impressions discovered at the crime scene was not conclusive.

{¶ 27} The record shows the shoeprint expert testified at trial regarding the tread, size, and wear of appellant's black Puma shoes in comparison to the impressions discovered at the crime scene. The expert opined appellant's shoes could have made the impressions. While the expert did not conclusively determine appellant's shoes matched the impressions at the crime scene, this does not establish the jury lost its way in accepting this evidence. Based on the shoeprint impressions found at the crime scene and the extensive analysis provided by the expert at trial, we find there was sufficient evidence by which the jury could reasonably infer that the impressions at the crime scene were created by appellant's shoes.

## Booking Report

{¶ 28} Appellant notes the booking report indicates he was wearing white pants when he was booked into jail. Appellant maintains the state arbitrarily concluded the

10.

booking report was a mistake, but the state did not prove the report was mistaken and that he was not, in fact, wearing white pants when he was booked in jail.

{¶ 29} A review of the record shows that Officer Dulinsky testified on direct examination at trial that his responsibilities included maintaining records for inmates and their personal belongings. During cross-examination, Officer Dulinsky testified he did not see or have any personal knowledge of appellant's clothing when appellant was booked. The booking report set forth appellant was wearing white pants. However, the state offered the testimony of Dyer and Officer Bates who both stated appellant was wearing tan shorts when they encountered him. Any discrepancy concerning what appellant was wearing was an issue for the jury to resolve in determining which witnesses were credible. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The jury obviously believed Dyer and Officer Bates, and we see no basis for concluding the jury lost its way or a manifest miscarriage of justice occurred.

## Conclusion

{¶ 30} After reviewing the entire record and weighing all of the evidence, we conclude the jury did not lose its way in finding appellant guilty of burglary. We further conclude this case does not meet the exceptional standard where the evidence presented weighs heavily against a conviction.

{¶ 31} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                     _____

JUDGE

Stephen A. Yarbrough, J.         

_____

James D. Jensen, P.J.              JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.